JWB REAL ESTATE CAPITAL,
LLC, a Florida Limited Liability
Company, et al.,

      Plaintiffs,

v.                               Case No. 3:17-cv-960-J-32PDB

CITY OF JACKSONVILLE BEACH,
a municipal Corporation of the State
of Florida,

      Defendant.

---

# **O R D E R**

This real estate dispute is before the Court on Defendant City of Jacksonville Beach's Motion to Sever Parties, for More Definite Statement, or In the Alternative, to Dismiss Plaintiffs' Second Amended Complaint (Doc. 40), to which Plaintiffs JWB Real Estate Capital, LLC, Hoose Homes and Investments, LLC, and BCEL 5, LLC filed a response (Doc. 42). Defendant filed a reply (Doc. 45), and Plaintiffs filed a sur-reply (Doc. 48). Also pending before the Court is the Joint Motion to Amend Case Management Order and Case Schedule. (Doc. 50).

Plaintiffs own four parcels in the City of Jacksonville Beach and wish to develop townhouses thereon. Defendant's Planning and Development Department ("PDD") processes and approves development plan applications under Section 34-251 of the Land Development Code ("LDC") (Doc. 40-1). On August 1, 2018, the Court held a hearing on Defendant's Motion to Sever Parties, and For More Definite Statement, Or In the Alternative, to Dismiss Plaintiffs' Amended Complaint (Doc. 17), at which it addressed similar issues raised in Defendant's instant motion, the record of which is incorporated herein (Doc. 27). Following oral argument, the Court abated the case pending Plaintiffs' efforts to render the case ripe for review. (Doc. 28).

On November 1, 2018, Plaintiffs filed the Second Amended Complaint ("SAC") (Doc. 33), which they argue contains allegations sufficient to withstand Defendant's renewed Motion to Sever Parties, for More Definite Statement, or In the Alternative, to Dismiss Plaintiffs' Second Amended Complaint (Doc. 40). Plaintiffs allege that Defendant refuses to process and/or approve their applications to develop townhouses in the City of Jacksonville Beach, and assert claims for Equal Protection, 42 U.S.C. § 1983, Const. Amend. XIV (Count I) and Declaratory Judgment under Chapter 86, Fla. Stat. (Count II). (Doc. 33 ¶¶ 245-98, 299-330). Further, they allege that Defendant's position that driveways constitute "parking areas" and walkways, porches, and patios constitute

"accessory uses" under the LDC is sufficiently final so as to make this action ripe. (Id. ¶¶ 112-13).

After Plaintiffs submitted their applications for approval to develop townhouses to Defendant, Heather Ireland, senior planner for Defendant, allegedly informed them at preapplication meetings that they would need to get variances for their developments because under the LDC, parking areas and accessory structures must be more than five feet from internal property lines, and some of the driveways and walkways Plaintiffs proposed were within five feet. (Id. ¶¶ 66-67, 71). William Mann, Planning and Development Director for Defendant, reiterated this requirement in subsequent meetings with Plaintiffs, stating that variances were needed before Defendant would process their applications. (Id.). The LDC gives the Board of Adjustment ("BOA") the authority to approve, approve with conditions, or deny variance requests. (Doc. 40 at 6-7). Plaintiffs allege that Mann informed them that the proposed developments do not meet the applicable LDC standards for variances for reductions in setbacks, he would not recommend approval of variance requests, and he believed the BOA should deny any variance applications for a reduction in setbacks that Plaintiffs might submit. (Doc. 33 ¶¶ 77-78). Specifically, Plaintiffs allege that "Mann does not believe the developments proposed in the Applications meet the hardship requirement for a variance under the LDC." (Id. ¶ 79). Alternatively, Mann suggested that Plaintiffs submit revised applications

for development plans of condominiums or apartments because they do not have internal property lines and would thus avoid the need for variances. (Id. ¶ 84). Under these circumstances, Plaintiffs allege that pursuit of variances for their proposed townhouse developments is "futile." (Id. ¶ 80).

However, following the August 1, 2018 hearing and in an effort to make the case ripe, Plaintiffs allege that between August 2-10, 2018, they requested interpretations of the relevant LDC provisions governing parking area and walkway/patio setback standards for accessory uses from Mann. (Id. ¶¶ 104-07). On August 24, 2018, Mann provided his interpretation that driveways must comply with the five-foot setback from property lines required for parking areas and walkways/patios must comply with the five-foot setback from property lines required for accessory uses.[1] (Id. ¶ 108). Plaintiffs appealed Mann's interpretation to the BOA on August 27, 2018. (Id. ¶ 109). The BOA heard the appeal on October 2, 2018 and upheld Mann's interpretation. (Id. ¶ 111). As a

---

[1] At the August 1, 2018 hearing, the Court permitted Plaintiffs to add allegations concerning Application 4 to the SAC. Plaintiffs had previously requested an interpretation from Mann regarding Application 4 in March 2018 (Doc. 33 ¶¶ 98-99). His interpretation in March 2018 was the same as the one he gave Plaintiffs in August 2018. Plaintiffs appealed his earlier interpretation to the BOA, which affirmed it. (Id. ¶¶ 100-01). Plaintiffs tried to appeal the BOA's ruling to the Planning Commission but Mann said they could not do so because the application had not been "denied," rather it had been "disapproved." (Id. ¶ 102).

result, before Plaintiffs can submit a development application, they must first seek and receive a variance.

Now, Defendant requests that the Court dismiss the SAC, arguing that the case is still not ripe. (Doc. 40 at 14). Despite Plaintiffs having obtained an interpretation from Mann which was affirmed by the BOA, Defendant contends that the true issue remains "whether the final decision-maker has reached determinations applying the LDC to Plaintiffs' desired developments." (Id. at 15). Defendant argues that getting Mann's interpretation of whether Plaintiffs would need to seek variances was only one of many steps in the development plan process. Had the BOA overruled Mann's interpretation, Plaintiffs would not have needed to seek variances and could have submitted their development plan applications. However, it did not, and Defendant argues that the next step for Plaintiffs is to apply to the BOA for variances.[2] (Doc. 40 at 6). Because the BOA—not Mann—is the final decisionmaker regarding variance requests, Defendant asserts that Plaintiffs' argument that a variance application would be futile because Mann said he would not recommend approval lacks merit. (Doc. 40 at 10 n.9). Moreover, as Plaintiffs have not alleged that they applied

---

[2] While neither Mann nor the Planning Commission are authorized to grant variances, notably, as the Planning Development Department director, Mann may recommend, and the BOA may impose, such conditions on variances as are necessary to accomplish the goals of the LDC. (Doc. 40 at 7).

for and were denied variances, Defendant contends that is "speculative to presume the BOA would reject any such request." (Doc. 40 at 17).

While cases within the Eleventh Circuit support the proposition that a plaintiff in like situations must seek variances before a case becomes ripe,[3] Plaintiffs contend that in relying on that body of law, Defendant has missed the point. Instead, Plaintiffs argue that the "'final decision' at-issue is whether [they] must apply for and receive variances, not whether [they] meet the requirements for variances."[4] (Doc. 42 at 9). Specifically, Plaintiffs allege in their equal protection count:

> Defendant has applied additional hurdles to Plaintiffs—receipt of variances for walkways, porches and driveways—that it has not applied to similar Townhouse developments.
>
> . . .

---

[3] See, e.g., Coles v. City of Jacksonville, No. 3:15-CV-1521-J-34PDB, 2017 WL 6059661, at *14 (M.D. Fla. Dec. 7, 2017), reconsideration denied, No. 3:15-CV-1521-J-34PDB, 2018 WL 1605839 (M.D. Fla. Apr. 3, 2018) ("because he opted out of seeking the additional distance exception, Coles denied the City an opportunity to reach a final decision on his requested Zoning Exceptions"); Grosscup v. Pantano, 725 F. Supp. 2d 1370, 1379 (S.D. Fla. 2010) ("where there is no allegation that Plaintiff has ever even sought these variances, the Court cannot find that a final decision has occurred"); Reserve, Ltd. v. Town of Longboat Key, 933 F. Supp. 1040, 1046 (M.D. Fla. 1996) ("The plaintiffs do not assert that they sought a variance or otherwise obtained a final decision regarding the application to their property of Longboat Key's 1984 and 1986 zoning decisions. Nor do they suggest that any efforts in that regard would have been futile.").

[4] Plaintiffs also do not base their equal protection claim on a denial of their applications (as they have not submitted applications for final approval).

Defendant has violated Plaintiffs' right to equal protection under the law by selectively applying accessory use/structure standards to Plaintiffs' proposed walkways and porches while not applying the same to other similar projects.

Defendant has violated Plaintiffs' right to equal protection under the law by selectively applying parking area standards to Plaintiffs' proposed driveways while not applying the same to other similar projects.

Defendant has violated Plaintiffs' right to equal protection under the law by requiring Plaintiffs to apply for and receive variances where similarly situated projects were not required to get a variance for said items.

(Doc. 33 ¶¶ 272, 278-80).

Thus, Plaintiffs' equal protection claim is "based upon the fact that Defendant is requiring Plaintiffs to get variances when it did not require comparators to get the same variances." (Doc. 42 at 9). This distinction is subtle but meaningful. Plaintiffs rely primarily on a Southern District of Alabama case which—although discussed in the context of a motion to amend the complaint— addresses similar arguments. In Bill Salter Advertising, Inc. v. City of Brewton, Alabama, the court noted that

[t]he fatal flaw in the City's reliance on [National Advertising Co. v. City of Miami, 402 F.3d 1335 (11th Cir. 2005)] is that Salter's proposed revised pleading would not assert First Amendment causes of action based on denial of the May 2007 permit applications; to the contrary, Salter would interpose due process and equal protection claims based on the City's manner of processing those applications. In other words, the

> wrong alleged in the proposed Amended Complaint is
> not that the May 2007 applications were denied, but is
> instead that the City has imposed trumped-up
> information requests and procedural requirements on
> Salter, and has selectively enforced certain provisions
> of its sign ordinance against Salter, all for the purpose
> of delaying disposition of those applications and
> discouraging Salter from proceeding.

Bill Salter Advert., Inc. v. City of Brewton, AL, No. CIV.A. 07-0081-WS-B, 2007 WL 2409819, at *3 (S.D. Ala. Aug. 23, 2007) (permitting amendment of complaint after finding the issues sufficiently defined to satisfy the constitutional and prudential aspects of a ripeness analysis).

Similarly, Plaintiffs do not argue that the equal protection claim stems from denial of their applications, but from Defendant's selective enforcement of certain LDC provisions against them because "approving the Applications would be politically disastrous due to Townhouses being perceived by the PDD as unpopular with citizens who regularly speak at public hearings before the [BOA], Planning Commission and City Council." (Doc. 33 ¶ 266). Courts in the Middle District of Florida have ruled that comparable cases are ripe when the proceedings have reached an impasse, and the parties' positions have been defined. See Bay Area Remodelers, Inc. v. Manatee Cty., Fla., No. 8:08-CV-788-T-30MAP, 2009 WL 151140, at *4 (M.D. Fla. Jan. 21, 2009) (plaintiff sufficiently alleged that it would be futile to pursue a final decision from the County where the County allegedly instructed plaintiff to pick up its permit packages and

cease further submissions);[5] Open Homes Fellowship, Inc. v. Orange Cty., Fla., 325 F. Supp. 2d 1349, 1363-64 (M.D. Fla. 2004) (holding an equal protection claim is ripe for adjudication when the relevant proceedings have reached an impasse and the positions have been defined, and hesitating to "put up a barrier to litigation when it is obvious that the process down the administrative road would be a waste of time and money."). Here, to the extent that Plaintiffs' equal protection claim hinges on whether they must seek variances, as opposed to denial of their applications for development approval, the Court concludes that Plaintiffs have sufficiently alleged that the parties have reached an impasse, and the case is ripe for review.

Defendant also argues that Plaintiffs failed to identify similarly situated comparators, noting that some comparators submitted development requests at different time periods, sought some form of variance, were projects of JWB, or are simply too dissimilar. (Doc. 40 at 22-26). Plaintiffs contest Defendant's characterization of its alleged comparators, arguing that the only pertinent issue is whether Defendant required comparators with driveways or walkways within five feet of an internal property line to seek a variance for those

---

[5] Bay Area is distinguishable in that the County told plaintiffs to cease further submissions. Here, Defendant only rejected Plaintiffs' applications to the extent that it requires Plaintiffs to apply for variances to be able to submit a complete application for review. However, Bay Area's analysis of what is a sufficient impasse to withstand a motion to dismiss is instructive.

elements. (Doc. 42 at 11-20). While not prejudging the ultimate outcome of the comparator issue, the Court finds Plaintiffs' allegations sufficient to withstand a motion to dismiss.

Finally, the Court stated at the August 1, 2018 hearing that it would not be inclined to grant a motion to sever or a motion for a more definite statement. (Doc. 37 at 53-54). On the facts alleged in the SAC, that remains the opinion of the Court, and the motions to sever or for a more definite statement are due to be denied.

Accordingly, it is hereby

**ORDERED:**

1.      Defendant City of Jacksonville Beach's Motion to Sever Parties, for More Definite Statement, or In the Alternative, to Dismiss Plaintiffs' Second Amended Complaint (Doc. 40) is **DENIED**.

2.      No later than **April 10, 2019**, Defendant must serve an answer to the SAC.

3.      The Joint Motion to Amend Case Management Order and Case Schedule (Doc. 50) is **GRANTED**.

4.      The Court will enter an amended case management scheduling order separately.

**DONE AND ORDERED** in Jacksonville, Florida the 20th day of March, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

sej
Copies:

Counsel of record